# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

| | |
|---|---|
| DUKE BRADFORD, ET AL., | |
| | No. 22-1023 |
| Plaintiffs-Appellants, | |
| v. | |
| U.S. DEPARTMENT OF LABOR, ET AL., | |
| Defendants-Appellees. | |

## APPELLANTS' MOTION TO STAY MANDATE

_____

Interlocutory Appeal from the Judgment of
the United States District Court
for the District Of Colorado

No. 1:21-cv-3283
The Honorable Philip A. Brimmer
Chief District Judge

_____

June 14, 2024

MICHAEL A. POON
STEVEN M. SIMPSON
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 1000
Arlington, Virginia 22201
202.888.6881
MPoon@pacificlegal.org
SSimpson@pacificlegal.org

*Counsel for Plaintiffs-Appellants*

Pursuant to Federal Rule of Appellate Procedure 41(d), Plaintiffs-Appellants move to stay the mandate pending the filing and disposition of a petition for a writ of certiorari with the Supreme Court.

Plaintiffs are outfitters who lead outdoor recreational excursions and possess permits to operate on federal lands. Plaintiffs challenge a final rule issued in November 2021 directing them and their members, along with federal contractors, to pay their employees at least $15 per hour, regardless of locality, and overtime wages of at least $22.50 per hour. Plaintiffs alleged that the rule is not supported by the Procurement Act, violates the nondelegation doctrine, and is arbitrary and capricious. In the District Court, Plaintiffs moved for a preliminary injunction, which the court denied. Plaintiffs appealed to this Court, which entered an injunction pending appeal on February 2, 2022. The Court then affirmed the District Court's denial of preliminary injunction on April 30, 2024, holding that the Procurement Act likely authorizes the rule. The Court issued its judgment on the same day.

In the normal course, the mandate would issue on June 21, 2024. Fed. R. App. P. 41(b). Appellants move to stay the mandate for 90 days,

until September 19, 2024, plus applicable extensions as provided by Rule 41(d)(2)(B).[1]

Rule 41(d)(1) requires a motion to stay the mandate to "show that the petition would present a substantial question and that there is good cause for a stay." These requirements are met.

## I.     A Petition Would Present a Substantial Question

Though there does not appear to be binding precedent on what constitutes a substantial question, the Supreme Court, in applying a similar standard, held that "a question of some substance or a substantial showing" requires "demonstrat[ing] that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (cleaned up). Intertwined with the "substantial question" issue is this Court's

---

[1] Counsel for Plaintiffs solicited the government's position on this motion, and the government stated that it "would oppose a stay to the extent that it would have the effect of maintaining the Tenth Circuit's injunction [pending appeal] as to anyone other than the two plaintiffs (Bradford and AVA) held to have standing in this case." *See* Doc. No. 10110646538 (Feb. 17, 2022) (order granting motion for injunction pending appeal). Plaintiffs do not oppose limiting the injunction pending appeal to Mr. Bradford and Arkansas Valley Adventures, LLC, if the Court stays the mandate.

2

requirement that motion to stay the mandate in a civil case demonstrate "a substantial possibility that a petition for writ of certiorari would be granted." 10th Cir. R. 41.1(B).

Plaintiffs' petition for a writ of certiorari would present the question of whether the rule likely exceeds the President's authority under the Procurement Act. The petition would also present the question of whether the Procurement Act *must* be interpreted as Plaintiffs argue because a contrary interpretation would raise serious doubts of the Act's constitutionality under the non-delegation doctrine. Whenever a three-judge panel issues a 2–1 decision, there is already a strong showing of a substantial question, but Judge Eid's particularly forceful dissent regarding the nondelegation issue even more clearly demonstrates that the question is substantial and that a court could resolve the issues in a different manner.

The Court's opinion concludes that Plaintiffs' use permits fall under the Procurement Act because they are part of the government's system for "supplying" outfitter services. *Bradford v. U.S. Dep't of Labor*, 101 F.4th 707, 720–21 (10th Cir. 2024). But there is a substantial question whether the government is *supplying* outfitter services to the public,

3

given that it neither supplies such services directly to the public nor contracts with Plaintiffs to supply such services. Rather, the relevant permits *allow* Plaintiffs to supply their own outfitter services to the public. If Plaintiffs did not provide those services, the government would not provide them itself or seek out others to do so. Indeed, the government does not even compensate Plaintiffs for providing services to the public—a classic feature of a contract. In short, the permits simply allow Plaintiffs to conduct their business on public lands; they are not contracts through which the government seeks to supply services to the public. Though this Court ultimately rejected these arguments, a "jurist[] of reason" could reach a different conclusion. *Barefoot*, 463 U.S at 893 n.4.

This Court's injunction pending appeal also demonstrates that a jurist of reason could reach a different conclusion than the merits panel. Although the two-judge motions panel did not lay out its reasoning in its order, it conducted the same analysis as the merits panel. *See Homans v. City of Albuquerque*, 264 F.3d 1240, 1243 (10th Cir. 2001) (Courts considering requests for injunction pending appeal and for preliminary

injunction conduct "the same inquiry."). Thus, together with Judge Eid, three judges of this Court differed with the majority of the merits panel.

There is also a substantial possibility that the Supreme Court would grant Plaintiffs' petition for writ of certiorari. 10th Cir. R. 41.1(B). The Supreme Court actively polices the Executive's claims of extraordinary power. *See, e.g.*, *Biden v. Nebraska*, 600 U.S. 482 (2023) (holding that Secretary of Education lacked statutory authority, under major questions doctrine, to cancel approximately $430 billion in student loans). And the claim of power here is broad indeed, "giv[ing] the President nearly unfettered power to regulate any nonpersonal service via any contract-like instrument," such that he can "do whatever he finds necessary to regulate entire industries in the name of what he believes to be economical and efficient." *Bradford*, 101 F.4th at 735 (Eid, J., dissenting).

The likelihood of Supreme Court review is bolstered by the existence of state-led litigation in the Fifth and Ninth Circuits challenging the same minimum-wage regulation on the same *ultra vires* grounds. *See Texas v. Biden*, No. 23-40671 (5th Cir.) (briefing completed on April 26, 2024); *Nebraska v. Su*, No. 23-15179 (9th Cir.) (argued and

submitted on February 6, 2024). These cases may well produce a circuit split with this Court's decision and prompt Supreme Court review, but even if the no circuit split is forthcoming, the important question in these cases—whether the President may unilaterally set a minimum wage for a very large portion of the economy—means there is a reasonable probability the Court would grant review. Finally, should the Supreme Court hear *Texas* or *Nebraska* on the merits instead of this case, there is a strong possibility that the Court would then grant the petition for writ of certiorari in this case, vacate this Court's judgment, and remand in light of its decision in *Texas* or *Nebraska*.

    Given the significance of the issue in this case, the multiple state-led cases on the same issue working their way to the Supreme Court, and the Supreme Court's attention to extraordinary claims of Executive power, there is at least a reasonable probability that the Court will grant Plaintiffs' petition. And given Judge Eid's dissent, there is a strong showing that reasonable jurists could reach a conclusion different than the majority's. Plaintiffs' petition will present a substantial question.

## II. There Is Good Cause for a Stay

There is also good cause to stay the mandate. Specifically, staying the mandate would serve judicial economy and efficiency. The District Court has not yet issued a final judgment. If the mandate issues and the case is returned to the District Court, the parties will likely brief a dispositive motion and, given the outcome in this appeal, the District Court will likely enter judgment for the government. Plaintiffs will then be forced to file an appeal to preserve the possibility of Supreme Court review, whereupon the parties and the Court will be required to engage in a second appeal.

Given that Supreme Court review is substantially possible, staying the mandate now will forestall the waste of judicial resources at both the District Court and this Court. And given that this appeal has been ongoing since January 2022, a relatively short delay in the issuance of the mandate to give the Supreme Court time to consider Plaintiffs' petition is appropriate.

### III. Conclusion

For the above reasons, Plaintiffs respectfully request that the Court stay the issuance of the mandate until September 19, 2024, plus applicable extensions as provided by Rule 41(d)(2)(B).

DATED: June 14, 2024.

Respectfully submitted,

*/s/ Michael A. Poon*
MICHAEL A. POON
STEVEN M. SIMPSON
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 1000
Arlington, Virginia 22201
202.888.6881
MPoon@pacificlegal.org
SSimpson@pacificlegal.org

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this document complies with Federal Rule of Appellate Procedure 27(d)(1)(E), 27(d)(2)(A), and 32(a)(5)–(6). It is printed in Century Schoolbook, a proportionately spaced font, and includes 1,398 words, excluding items enumerated in Rule 32(f). I relied on my word processor, Microsoft Word, to obtain the count.

I hereby certify that all required privacy redactions have been made pursuant to 10th Cir. R. 25.5, any required paper copies to be submitted to the Court are exact copies of the version submitted electronically, and the electronic submission was scanned for viruses with the most recent version of a commercial virus scanning program, and is free of viruses.

DATED: June 14, 2024.

                                Respectfully submitted,

                                */s/ Michael A. Poon*
                                MICHAEL A. POON
                                STEVEN M. SIMPSON
                                Pacific Legal Foundation
                                3100 Clarendon Blvd., Suite 1000
                                Arlington, Virginia 22201
                                202.888.6881
                                MPoon@pacificlegal.org
                                SSimpson@pacificlegal.org

                                *Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to all counsel of record.

Respectfully submitted,

*/s/ Michael A. Poon*
MICHAEL A. POON
STEVEN M. SIMPSON
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 1000
Arlington, Virginia 22201
202.888.6881
MPoon@pacificlegal.org
SSimpson@pacificlegal.org

*Counsel for Plaintiffs-Appellants*